IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RICHARD DILAURI, | ) | C.A. No. 09-198 Erie |
| Plaintiff | ) | |
| | ) | |
| v. | ) | District Judge McLaughlin |
| | ) | Magistrate Judge Baxter |
| WILLIAM P. MULLEN, et al., | ) | |
| Defendants | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

**I.     RECOMMENDATION**

It is respectfully recommended that Defendants' Motion to Dismiss Second Amended Complaint [ECF No. 37] be granted.

**II.    REPORT**

**A.    Relevant Procedural and Factual History**

On August 4, 2009, Plaintiff Richard DiLauri, an inmate formerly incarcerated at the Allegheny County Jail in Pittsburgh, Pennsylvania ("ACJ"), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983,[1] against Defendants William P. Mullen, Allegheny County Sheriff ("Mullen"), and Ramon C. Rustin, Warden at ACJ ("Rustin"). [ECF No. 6]. He subsequently filed an amended complaint on May 28, 2010, adding two unnamed Defendants identified as Deputy "Jane Doe" and Guard "John Doe." [ECF No. 30]. Plaintiff thereafter filed a second amended complaint on September 14, 2010, adding three more Defendants: Michael H. Wojcik, Allegheny County Solicitor ("Wojcik"); Allegheny County Law Department ("ACLD"); and an

---

[1] Plaintiff is currently incarcerated at the State Correctional Institution at Albion, Pennsylvania.

unnamed Defendant identified as Guard "John Doe II." [ECF No. 36].[2]

Plaintiff alleges that Defendants violated his rights under the eighth amendment to the United States Constitution because they were deliberately indifferent to his health and safety, and to his serious medical needs. In particular, Plaintiff claims that he was injured on August 6, 2007, when he fell down a flight of steps while being escorted by Defendant Jane Doe from a court room at the Allegheny County Courthouse. (ECF No. 36, Second Amended Complaint, at Section IV.C). According to Plaintiff, just prior to the fall, he had informed Jane Doe that his leg shackles were tangled, and he hesitated at the top of the landing when he "noticed how dark and steep [the stairwell] looked." (Id.). However, the deputy insisted that he proceed down the steps, stating that the stairwell was "the only way back down," and that he should not worry because she was holding him by the belt. (Id.). Plaintiff then proceeded down a few steps slowly, but slipped on the tangled chains and fell down the remaining steps to the landing below. (Id.). With the assistance of three other deputies, Plaintiff was lifted and taken to a desk area, where he stated that "it would be a good idea" for him to go to the hospital. (Id.). He was then taken by the Pittsburgh EMS to the emergency room at UPMC Presbyterian Medical Center ("UPMC").

At UPMC, Plaintiff had x-rays and was diagnosed with "torn ligaments and tendons of the left hip." (Id.).[3] He was then released from the hospital and returned to ACJ at around 6:00 p.m. on August 6, 2007, with instructions to have follow-up exams and to soak the bruised areas. (Id.). Later that evening, Plaintiff's pain got worse and his cellmate had to help him undress. Plaintiff alleges that he asked the night guard, Defendant John Doe II, if he could make a medical

---

[2]

The "John Doe" Defendant named in Plaintiff's first amended complaint was also renamed "John Doe I" in the second amended complaint.

[3]

Plaintiff alleges that he also had bruises on both elbows and his left knee. (Id.).

visit, but his request was denied. (Id.). The next morning and evening, Plaintiff alleges that he asked Defendants John Doe I and John Doe II to be placed on medical callout, but "had no result." (Id.). He alleges that he asked again to be placed on medical callout on August 8, 2007, but was denied by both the insulin line nurse and the night guard, Defendant John Doe II. (Id.). The next day, Plaintiff was transferred to SCI-Greene, where he allegedly received no medical help other than one Ibuprofen. (Id.). He was then transferred to SCI-Camp Hill on August 16, 2007, where he received Ibuprofen and one tube of Ben Gay in October 2007. (Id.). Plaintiff was subsequently transferred to SCI-Albion on November 5, 2007. (Id.).

On January 22, 2008, Plaintiff was examined by an orthopedic surgeon, Dr. Habusta, who diagnosed a fractured left hip and ordered a cat scan and x-rays. (Id.). Plaintiff saw Dr. Habusta again on February 25, 2008, at which time Plaintiff was told that he would have hip replacement surgery after the summer of 2008. (Id.).

Based on the foregoing facts, Plaintiff brings the following claims:
1. An Eighth Amendment claim against Defendant Jane Doe "for her failure to prevent harm to Plaintiff;"

2. An Eighth Amendment claim against Defendant Rustin for failing "to take steps to correct the substandard medical care at [ALJ];"

3. Eighth Amendment claims against Defendants John Doe I and John Doe II "for refus[ing] to have a medical visit arranged, or to have medical department come to pod to administer medical attention and medication for the pain;"

4. An Eighth Amendment claim against Defendant Mullen for failure to take action to resolve the "potentially dangerous problem" of walking a person in leg shackles down the stairway at issue, and for failure to train Defendant Jane Doe "to recognize a potentially dangerous situation;"

5. An Eighth Amendment claim against Defendant Wojcik for "failure to prevent harm [by] not maintaining and offering a safe route from the holding cell to the county court room at the Allegheny County Courthouse;" and

6. An Eighth Amendment claim against Defendant ACLD for maintaining an unsafe courthouse.

As relief for his claims, Plaintiff seeks compensatory and punitive damages.

In response to Plaintiff's second amended complaint, Defendants have filed a motion to dismiss, arguing, *inter alia*, that: (i) Plaintiff's claims against Defendants Jane Doe, John Doe I, John Doe II, Wojcik, and ALCD are barred by the applicable statute of limitations; (ii) Plaintiff has failed to establish the required personal involvement of the Defendants; and (iii) Plaintiff has failed to state a claim upon which relief may be granted. [ECF No. 37]. Plaintiff has since filed a response to Defendants' motion. [ECF No. 48]. This matter is now ripe for consideration.

### B. Standards of Review

#### 1. Motion to Dismiss

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) must be viewed in the light most favorable to the plaintiff and all the well-pleaded allegations of the complaint must be accepted as true. Erickson v. Pardus, 551 U.S. 89, 93-94 (2007). A complaint must be dismissed pursuant to Rule 12 (b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)(rejecting the traditional 12 (b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41 (1957)). See also Ashcroft v. Iqbal, ___ U.S. ___, ___, 129 S.Ct. 1937 (May 18, 2009) (specifically applying Twombly analysis beyond the context of the Sherman Act).

The Court need not accept inferences drawn by plaintiff if they are unsupported by the facts as set forth in the complaint. See California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) citing Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997). Nor must the court accept legal conclusions set forth as factual allegations. Twombly, 550 U.S. at 555, citing Papasan v. Allain, 478 U.S. 265, 286 (1986). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. Although the United States Supreme Court does "not require heightened fact pleading of specifics, [the Court does require] enough facts to state a claim to relief that is plausible on its face." Id. at 570.

In other words, at the motion to dismiss stage, a plaintiff is "required to make a 'showing' rather than a blanket assertion of an entitlement to relief." Smith v. Sullivan, 2008 WL 482469, at *1 (D.Del. February 19, 2008) quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008). "This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." Phillips, 515 F.3d at 234, quoting Twombly, 550 U.S. at 556.

The Third Circuit subsequently expounded on the *Twombly/Iqbal/Phillips* line of cases, as follows:

> To prevent dismissal, all civil complaints must now set out "sufficient factual matter" to show that the claim is facially plausible. This then "allows the court to draw the reasonable inference that the defendant is liable for the alleged misconduct."
>
> * * *
>
> [A]fter *Iqbal*, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. **First, the factual and legal elements of a claim should be separated. The district court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a district court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief.** A complaint has to "show" such an entitlement with its facts. As the Supreme Court instructed in *Iqbal*, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]' - 'that the pleader is entitled to relief.'" This "plausibility" requirement will be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009)(emphasis added)(citations omitted).

### 2. *Pro Se* Pleadings

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" Haines v. Kerner, 404 U.S. 519, 520 (1972). If the

court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. See Boag v. MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969)("petition prepared by a prisoner... may be inartfully drawn and should be read 'with a measure of tolerance'"); Freeman v. Department of Corrections, 949 F.2d 360 (10th Cir. 1991). Under our liberal pleading rules, a district court should construe all allegations in a complaint in favor of the complainant. Gibbs v. Roman, 116 F.3d 83 (3d Cir.1997)(overruled on other grounds). See, e.g., Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996)(discussing Fed.R.Civ.P. 12(b)(6) standard); Markowitz v. Northeast Land Company, 906 F.2d 100, 103 (3d Cir. 1990)(same). Because Plaintiff is a *pro se* litigant, this Court will consider facts and make inferences where it is appropriate.

### C. Discussion
#### 1. Statute of Limitations

Defendants argue that Plaintiff's claims against Defendants Jane Doe, John Doe I, John Doe II, Wojcik, and ALCD are barred by the applicable statute of limitations and should be dismissed. The Court agrees.

The federal civil rights laws do not contain a specific statute of limitations for § 1983 actions. However, it is well established that the federal courts must look to the relevant state statute of limitations for personal injury claims to determine the applicable limitations period. Sameric Corp. Del., Inc. v. City of Philadelphia, 142 F.3d 582 (3d Cir. 1998)(internal citations omitted). In this regard, federal courts sitting in Pennsylvania have adopted Pennsylvania's two year personal injury statute of limitations set forth at 42 Pa.C.S.A. § 5524, in determining that a § 1983 claim must be filed no later than two years from the date the cause of action accrued. See Lake v. Arnold, 232 F.2d 360, 368 (3d Cir. 2000); Urrutia v. Harrisburg County Police Dept., 91

F.3d 451 (3d Cir. 1996). Furthermore, a claim under § 1983 accrues when the plaintiff "knew or should have known of the injury upon which [his] claim is based." Sameric, 142 F.3d at 599.

Here, Defendants Jane Doe and John Doe I, were not named as Defendants nor were any claims brought against them until the filing of Plaintiff's first amended complaint on May 28, 2010, and Defendants Wojcik, ALCD, and John Doe II, were not named as Defendants nor were any claims brought against them until the filing of Plaintiff's second amended complaint on September 14, 2010. [ECF No. 36]. (All of the foregoing Defendants will hereinafter be referred to collectively as "new Defendants").

The latest date on which the new Defendants' alleged actions could have occurred was August 9, 2007, the date on which Plaintiff was transferred from ALJ to SCI-Greene. Accordingly, the two-year statute of limitations expired on August 9, 2009, well before the claims against the new Defendants were added to this action. Thus, Plaintiff's claims against the new Defendants are time-barred unless the amendments relate back to the date the original complaint was filed, pursuant to Fed.R.Civ.P. Rule 15(c), which provides, in pertinent part, as follows:

>  (c) **Relation Back of Amendments**.
>
>  (1) ***When an Amendment Relates Back.*** An amendment to a pleading relates back to the date of the original pleading when:
>
>  \* \* \*
>
>  (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out–or attempted to be set out–in the original pleading; or
>
>  (C) the amendment changes the party or the naming of the party against whom a claim is asserted if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by

> amendment:
>
> (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
>
> (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the identity of the proper party's identity.

Here, it is apparent that Plaintiff's claims against the new Defendants arise out of the same conduct and occurrences set forth in the original complaint, i.e., the circumstances surrounding Plaintiff's fall on August 6, 2007, and the alleged lack of medical care at ALJ from August 6-9 2007. However, since the new Defendants were brought in by amendment, Rule 15(c)(1)(C) requires that: (i) they must have received notice of the institution of the action within 120 days (the period provided by Rule 4(m)) following the filing of the original complaint, and (ii) they knew or should have known that they were intended to be named as parties to the lawsuit. Both of these requirements must be met before Plaintiff's claims against the new Defendants may be found to relate back to the filing of his original complaint. In this case, the Court sees no need to consider the notice requirement because Plaintiff has failed to meet the requirement of Rule 15(c)(1)(C)(ii).

To satisfy the requirement of Rule 15(c)(1)(C)(ii), "the plaintiff must demonstrate that a mistake concerning the *identity* of the proper party existed at the time the complaint was filed." Schach v. Ford Motor Co., 210 F.R.D. 522, 527 (M.D.Pa. 2002)(emphasis in original), citing Nelson v. County of Allegheny, 60 F.3d 1010, 1014 (3d Cir. 1995). Here, Plaintiff has not alleged any mistake as to the identity of the new Defendants at the time he filed his original

complaint. In fact, three of the new Defendants – Jane Doe, John Doe I, and John Doe, II – were not even identified by their proper names upon being added, and they still remain unidentified to date. Nothing prevented Plaintiff from naming these Defendants in the same manner in the original complaint. Defendants Wojcik and ALCD could also have been named in generic terms in the original Complaint until Plaintiff discovered their identities through discovery. Thus, Plaintiff's failure to name the new Defendants in his original Complaint was clearly not a case of mistaken identity; he simply did not name them.

Based on the foregoing, the claims against the new Defendants set forth in the first and second amended complaints do not relate back to the date of the original complaint in this matter. Since both the first and second complaints were filed well after the expiration of the two-year statute of limitations, the claims against the new Defendants are time-barred and should be dismissed.

### 2. *Respondeat Superior*

Original Defendants Mullen and Rustin argue that Plaintiff claims against them should be dismissed because they are based solely upon supervisory liability, or *respondeat superior*. In particular, Plaintiff asserts the following claims against these Defendants in his second amended complaint:

> ... Defendant William P. Mullen, Sheriff should have known that the stairway in question was a potentially dangerous problem, in trying to control a person while being shackled and handcuffed, with chains that are tangled. His failure to take action to resolve the problem and his failure to train the Deputy to recognize a potentially dangerous situation and to resolve the problem, to take an alternative route and to try to control an inmate in her custody twice her size, who had no control of his

> hands and foot movements. His failure to take action resulted in the Plaintiff's fall and injuries.
>
>       *      *      *
>
> Ramon C. Rustin, Warden... failed to act, to take steps to correct the substandard medical care at the jail, which resulted in the Plaintiff's continual pain and worsening of his condition. Despite Dr. Pacella of UPMC, who the Plaintiff was examined by, said to have a follow-up exam, therapy and medication at the jail, which he should have been aware of when he was given paperwork & report when returned on 8/6/07 to intake.

(ECF No. 36, Second Amended Complaint, at Section IV.C, pp. 2-3).

When a supervisory official is sued in a civil rights action, liability can only be imposed if that official played an "affirmative part" in the complained-of misconduct. Chinchello v. Fenton, 805 F.2d 126, 133 (3d Cir. 1986). Although a supervisor cannot encourage constitutional violations, a supervisor has "no affirmative constitutional duty to train, supervise or discipline so as to prevent such conduct." Id. quoting Brown v. Grabowski, 922 F.2d 1097, 1120 (3d Cir. 1990), cert. denied, 501 U.S. 1218 (1991). The supervisor must be personally involved in the alleged misconduct. Rode v. Dellarciprete, 845 F.2d 11958, 1207 (3d Cir. 1988). Section 1983 liability cannot be predicated solely on *respondeat superior*. Rizzo v. Goode, 423 U.S. 362 (1976); see also Monell v. Department of Social Services, 436 U.S. 658 (1978) (superiors of line officers who act in violation of constitutional rights may not be held liable on a theory of vicarious liability merely because the superior had a right to control the line officer's action); Robinson v. City of Pittsburgh, 120 F.3d 1286, 1293-1295 (3d Cir. 1997) (to hold police chief liable under § 1983 for violating female subordinate officer's rights, she was required to prove that he personally participated in violating the her rights, that he directed others to violate her rights, or that he had knowledge of and acquiesced in his subordinates' violations).

In this case, Plaintiff has failed to allege the personal involvement of either Defendant Mullen or Defendant Rustin in any alleged violation of his constitutional rights. Plaintiff merely alleges that both Defendants failed to take action to prevent the conduct of their subordinates, which allegations clearly implicate Defendants' supervisory liability. This is not sufficient to state a Section 1983 claim against either Defendant Mullen or Rustin, and the claims against said Defendants should be dismissed accordingly.

### III. CONCLUSION

For the foregoing reasons, it is respectfully recommended that Defendants' Motion to Dismiss Second Amended Complaint [ECF No. 37] be granted and that this case be dismissed.

In accordance with the Federal Magistrates Act, 28 U.S.C. § 636(b)(1), and Fed.R.Civ.P. 72(b)(2), the parties are allowed fourteen (14) days from the date of service to file written objections to this report and recommendation. Any party opposing the objections shall have fourteen (14) days from the date of service of objections to respond thereto. Failure to timely file objections may constitute a waiver of some appellate rights. See Nara v. Frank, 488 F.3d 187 (3d Cir. 2007).

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge

Dated: May 31, 2011

cc: The Honorable Sean J. McLaughlin
United States District Judge