IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RICHARD DiLAURI, | ) | C.A. No. 09-198 Erie |
| Plaintiff | ) | |
| | ) | |
| v. | ) | District Judge McLaughlin |
| | ) | Magistrate Judge Baxter |
| WILLIAM P. MULLEN, | ) | |
| Defendant. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I.   RECOMMENDATION

It is respectfully recommended that Defendant's Motion for Summary Judgment [ECF No. 79] be granted.

### II.  REPORT

#### A.   Relevant Procedural History

On August 4, 2009, Plaintiff Richard DiLauri, an inmate formerly incarcerated at the Allegheny County Jail in Pittsburgh, Pennsylvania ("ACJ"), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983,[1] against Defendants William P. Mullen, Allegheny County Sheriff ("Mullen"), and Ramon C. Rustin, Warden at ACJ ("Rustin"). [ECF No. 6]. He subsequently filed an amended complaint on May 28, 2010, adding two unnamed Defendants identified as Deputy "Jane Doe" and Guard "John Doe." [ECF No. 30]. Plaintiff thereafter filed a second

---

[1] Plaintiff has since been released from incarceration and currently resides in Calvin, Pennsylvania.

1

amended complaint on September 14, 2010, adding three more Defendants: Michael H. Wojcik, Allegheny County Solicitor ("Wojcik"); Allegheny County Law Department ("ACLD"); and an unnamed Defendant identified as Guard "John Doe II." [ECF No. 36].[2]

On June 1, 2011, this Court issued a Report and Recommendation recommending that Defendants' motion to dismiss be granted and that Plaintiff's second amended complaint be dismissed. [ECF No. 50]. This recommendation was adopted by District Judge Sean J. McLaughlin by Memorandum Order dated June 13, 2011, and Plaintiff's second amended complaint was dismissed. [ECF No. 52].

Plaintiff filed a timely Notice of Appeal with the Third Circuit Court of Appeals on July 5, 2011. [ECF No. 53]. On April 30, 3012, the Third Circuit Court issued a Judgment Order affirming in part and vacating in part Judge McLaughlin's Order of June 13, 2011. [ECF No. 64]. In particular, the Third Circuit Court affirmed the dismissal of Plaintiff's claims against Defendants Rustin, Wojcik, ACLD, Jane Doe, John Doe I, and John Doe II, but vacated the dismissal of Plaintiff's claims against Defendant Mullen, and advised that Plaintiff should be afforded the opportunity to amend his complaint to include all of his allegations against Defendant Mullen. [ECF No. 66-1]. This case was thereby remanded to this Court for further proceedings consistent with the Third Circuit Court's judgment and opinion.

Upon remand, Plaintiff filed an amended complaint setting forth all of his allegations

---

[2] The "John Doe" Defendant named in Plaintiff's first amended complaint was also renamed "John Doe I" in the second amended complaint.

against Defendant Mullen. [ECF No. 67].³ In general, Plaintiff alleges that on August 6, 2007, while being escorted in shackles and handcuffs by a deputy sheriff from a courtroom in the Allegheny County Courthouse to the Allegheny County Jail, he fell down a stairway in the courthouse and suffered a fractured left hip. Plaintiff claims that Defendant Mullen was deliberately indifferent to his safety in violation of his Eighth Amendment rights by: (i) establishing a policy or custom of requiring inmates in shackles and handcuffs to use the stairway at issue with the alleged knowledge that the stairway was a "well known hazard;" (ii) failing to take reasonable measures to ensure Plaintiff's safety; and (iii) failing to adequately train deputy sheriffs on how to safely escort inmates in shackles and handcuffs.

The parties have completed discovery, and Defendant Mullen has filed a motion for summary judgment [ECF No. 79] arguing that Plaintiff's claims fail as a matter of law. Despite having been given ample time to file a response to Defendant's motion, Plaintiff has failed to do so. This matter is now ripe for consideration.

**B.    Relevant Factual History**⁴

---

3

Plaintiff's most recent amended complaint also reiterates his previous allegations against the other Defendants who have been dismissed from this case. Because these allegations do not pertain to Defendant Mullen, the Court will disregard them.

4

The factual history set forth herein is gleaned from Defendant's Concise Statement of Material Facts [ECF No. 81], which has not been opposed by Plaintiff in a separate concise statement of material facts. Pursuant to Local Civil

On August 6, 2007, Plaintiff was transported from the Allegheny County Jail to the Allegheny County Courthouse to appear for a court hearing. (ECF No. 81, Defendant's Concise Statement of Material Facts, at ¶ 36). Prior to the transport, Plaintiff was placed in handcuffs and shackles, which Plaintiff recalls as being in poor condition, rusty, kinked and tangled. (Id. at ¶¶ 37-38). He was transported by van to the Allegheny County Courthouse and was taken to his court hearing by a female deputy sheriff. (Id. at ¶¶ 39-40).

After the hearing, Plaintiff was escorted by the same deputy to a holding cell located at the bottom of a stairway in the courthouse. (Id. at ¶¶ 40-42). During the escort, Plaintiff complained to the deputy that he was having difficulty walking due the poor condition of the shackles, and showed them to her. (Id. at ¶ 41). He and the deputy proceeded to walk past a desk situated at the top of the stairway, at which time Plaintiff commented on the condition of the shackles to a man sitting behind the desk, but received no response. (Id. at ¶¶ 42-43). Plaintiff then hesitated at the top of the stairway, commented again on the condition of his shackles, and expressed concern about the steepness of the stairs. (Id. at ¶ 44). The deputy responded that the stairway was the only way down and reassured him that he could proceed. (Id. at ¶ 45). Plaintiff proceeded down several steps before stumbling and falling down the remaining steps to the landing below. (Id. at ¶¶ 46-47). Plaintiff was subsequently taken to the hospital for evaluation and was diagnosed with torn ligaments and bruising before being released back to the Allegheny

---

Rule 56E, material facts set forth in a party's Concise Statement of Material Facts, which are claimed to be undisputed, will be deemed admitted for purposes of deciding a motion for summary judgment, unless such facts are specifically denied or otherwise controverted by a separate concise statement of the opposing party. See United States of America ex rel. Paranich v. Sorgnard, 396 F.3d 326, 331 n. 5 (3d Cir. 2005)(citing M.D.Pa. L.R. 56.1, which is essentially identical to our District's Local Civil Rule 56E). Accordingly, this Court deems Defendant's

County Jail. (Id. at ¶¶ 49-50).

### C. Standards of Review

Federal Rule of Civil Procedure 56(c)(2) provides that summary judgment shall be granted if the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Rule 56(e)(2) further provides that when a motion for summary judgment is made and supported, "an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party."

A district court may grant summary judgment for the defendant when the plaintiff has failed to present any genuine issues of material fact. Fed.R.Civ.P. 56(c). The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Andreoli v. Gates, 482 F.3d 641, 647 (3d Cir. 2007); UPMC Health System v. Metropolitan Life Ins. Co., 391 F.3d 497, 502 (3d Cir. 2004).

The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial. Fed.R.Civ.P. 56(e); Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460-461 (3d Cir. 1989)(the non-movant must present affirmative evidence - more than a

---

statement of material facts, which are claimed to be undisputed, as admitted.

scintilla but less than a preponderance - which supports each element of his claim to defeat a properly presented motion for summary judgment). The non-moving party must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents (i.e., depositions, answers to interrogatories and admissions) to meet his burden of proving elements essential to his claim. Celotex, 477 U.S. at 322. See also Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001). The non-moving party "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue." Garcia v. Kimmell, 2010 WL 2089639, at * 1 (3d Cir. 2010) quoting Podobnik v. U.S. Postal Serv., 409 F.3d 584, 594 (3d Cir. 2005).

When considering a motion for summary judgment, the court is not permitted to weigh the evidence or to make credibility determinations, but is limited to deciding whether there are any disputed issues and, if there are, whether they are both genuine and material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). The court must consider the evidence, and all reasonable inferences which may be drawn from it, in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). See also El v. SEPTA, 479 F.3d 232, 238 (3d Cir. 2007).

A material fact is a fact whose resolution will affect the outcome of the case under applicable law. Anderson, 477 U.S. at 248. Summary judgment is only precluded if the dispute about a material fact is "genuine," i.e., if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Id. at 247-249.

### 2. *Pro Se* Pleadings

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" Haines v. Kerner, 404 U.S. 519, 520 (1972). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. See Boag v. MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969)("petition prepared by a prisoner... may be inartfully drawn and should be read 'with a measure of tolerance'"); Freeman v. Department of Corrections, 949 F.2d 360 (10th Cir. 1991). Under our liberal pleading rules, a district court should construe all allegations in a complaint in favor of the complainant. Gibbs v. Roman, 116 F.3d 83 (3d Cir.1997)(overruled on other grounds). See, e.g., Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996)(discussing Fed.R.Civ.P. 12(b)(6) standard); Markowitz v. Northeast Land Company, 906 F.2d 100, 103 (3d Cir. 1990)(same). Because Plaintiff is a *pro se* litigant, this Court will consider facts and make inferences where it is appropriate.

### D. Discussion

Plaintiff alleges that Defendant Mullen was deliberately indifferent to his safety in violation of his Eighth Amendment rights by requiring him to be taken down a "dark, steep, dangerous stairway" in shackles and handcuffs, knowing of the risk of harm, yet failing to take any measures to protect him. In particular, Plaintiff essentially sets forth four ways in which Defendant Mullen allegedly violated his Eight Amendment rights: (i) he was present at the time of the incident and did nothing to protect Plaintiff; (ii) he was aware that the stairway at issue was a "well known hazard," yet did nothing to correct the problem; (iii) he established and

enforced a policy requiring inmates to be escorted down the subject stairway while in handcuffs and shackles; and (iv) he failed to adequately train deputy sheriffs on how to safely escort inmates in shackles and handcuffs. The first two implicate Defendant Mullen's direct liability, while the latter two seek to impose supervisory liability.

### 1. Direct Liability Claims

To prove an Eighth Amendment violation based on a failure to ensure his reasonable safety, Plaintiff must show that Defendant was "deliberately indifferen[t] to a substantial risk of serious harm." Betts v. New Castle Youth Development Center, 621 F.3d 249, 256 (3d Cir. 2010). "The question of [Defendant's] deliberate indifference is a subjective inquiry, while risk of harm is evaluated objectively." Id., citing Atkinson v. Taylor, 316 F.3d 257, 262 (3d Cir. 2003). "An Eighth Amendment claimant need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." Farmer v. Brennan, 511 U.S. 825, 842 (1994). "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." Id. (internal citation omitted).

"Because, however, prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment, it remains open to the officials to prove that they were unaware even of an obvious risk to inmate health or safety…. Prison officials charged with deliberate

8

indifference might show, for example, that they did not know of the underlying facts indicating a sufficiently substantial danger and that they were therefore unaware of a danger, or that they knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent." Id. at 844.

To defeat summary judgment, Plaintiff "must present enough evidence to support the inference that the defendant[] 'knowingly and unreasonably disregarded an objectively intolerable risk of harm.'" Beers-Capitol, 256 F.3d at 132, citing Farmer, 511 U.S. at 846. Because Plaintiff has failed to respond to Defendant's summary judgment motion, his direct liability claims against Defendant necessarily rest upon his unsupported allegations that (i) Defendant was present at the top of the stairway on the date of the incident and was, thus, informed of Plaintiff's difficulties with the shackles and his reluctance to proceed down the stairway; and (ii) Defendant had knowledge that the stairway was a "well known hazard." According to the record evidence submitted by Defendant, however, neither of these allegations is true.

First, in his supporting affidavit, Defendant declares that on the date of the incident at issue, August 6, 2007, he was working in his executive office, which is located in a publicly inaccessible area on the first floor of the Allegheny County Courthouse, two floors below the entry to the stairway in question. (ECF No. 82-1, Exhibit F, Affidavit of William P. Mullen, at ¶¶ 38-39). As a result, Defendant was not the man behind the desk at the top of the stairway to whom Plaintiff commented about the condition of his shackles and his reluctance to descend the stairway, nor was Defendant present in or around the third floor entry to the stairway on August

9

6, 2007. (Id. at ¶ 41, 43). Instead, the courthouse "day sheet" for April 6, 2007, reflects that the desk at the top of the stairway was assigned to a deputy named Thomas Jarzynka, who had manned the desk on a regular basis since on or about May 26, 1998. (ECF No. 82-1, Exhibit E, Affidavit of Marianne DiVecchio, at ¶¶ 7-9, and pp. 4-7). Thus, the record evidence confirms that Defendant had no direct knowledge of Plaintiff's circumstances at the time of the incident at issue in this case, and was in no position to do anything to protect him from falling down the stairway.

Second, there is no objective evidence of record to support Plaintiff's assertion that the stairway in question was a "well-known hazard." According to Defendant, prior to the incident in question, there were no written reports on record in the Allegheny County Sheriff's Office of incidents of other detainees falling down the subject stairway and injuring themselves, and Defendant is personally unaware of any such incidents having occurred. (ECF No. 82-1, Exhibit F, Affidavit of William P. Mullen, at ¶¶ 28-29). Moreover, an administrative investigation conducted after Plaintiff's incident, consisting of a review of incident reports dating back to 1998, revealed no other accident involving a detainee falling down the subject stairway and sustaining injuries. (Id. at ¶ 30). In fact, the only similar incident of which Plaintiff claims to be aware is allegedly recounted in the case of Beck v. City of Pittsburgh, 89 F.3d 966 (3d Cir. 1996) (See, ECF No. 82-1, Exhibit G, Plaintiff's Answers to Interrogatories, at ¶ 10); however, Beck actually involved a claim of excessive use of force by a police officer during the plaintiff's arrest and does not in any way refer to an incident involving the stairway at issue in this case. Accordingly, Plaintiff's assertion that the subject stairway was a "well-known hazard" of which

Defendant was aware, yet ignored to Plaintiff's detriment, is not supported by any evidence of record.

Since Plaintiff has presented no evidence to support his claims of direct liability against Defendant Mullen, summary judgment should be granted in favor of Defendant on such claims.

### 2. Supervisory Liability

An Eighth Amendment claim implicating supervisors for their deficient policies adds another level to the analysis. Beers-Capitol v. Whetzel, 256 F.3d 120, 134 (3d Cir. 2001). "To hold a supervisor liable because his policies or practices led to an Eighth Amendment violation, the plaintiff must … show that: (1) the existing policy or practice created an unreasonable risk of the Eighth Amendment injury; (2) the supervisor was aware that the unreasonable risk was created; (3) the supervisor was indifferent to that risk; and (4) the injury resulted from the policy or practice. Id, citing Sample v Diecks, 885 F.2d 1099, 1118 (3d Cir. 1989).

According to Sample, one way—perhaps the easiest way—a plaintiff can make out a supervisor liability claim is by showing that "the supervisory official failed to respond appropriately in the face of an awareness of a pattern of such injuries." Id. As discussed in the previous section, however, the record evidence in this case conclusively establishes that there were no previously reported incidents involving an inmate falling down the subject stairway and sustaining injuries. Thus, Plaintiff cannot show that Defendant was aware of a "pattern of such injuries," yet failed to respond.

But that is not the only way to make out such a claim, as "there are situations in which the

risk of constitutionally cognizable harm is so great and so obvious that the risk and the failure of supervisory officials to respond will alone support findings of the existence of an unreasonable risk, of knowledge of that unreasonable risk, and of indifference to it." Id. Here, however, in light of the pristine safety record of inmate transits utilizing the subject stairway prior to August 6, 2007, Plaintiff cannot show that Defendant Mullen was deliberately indifferent to a "demonstrable risk of constitutionally cognizable harm" that was "so great and so obvious." Thus, summary judgment should be entered in favor of Defendant on Plaintiff's supervisory liability claim challenging the policy requiring inmates to be escorted down the subject stairway in shackles and hand cuffs.

Finally, Plaintiff claims that Defendant violated his Eighth Amendment rights by failing to train deputy sheriffs on the proper method of escorting inmates in shackles and handcuffs. When a supervisory official is sued in a civil rights action, liability can only be imposed if that official played an "affirmative part" in the complained-of misconduct. Chinchello v. Fenton, 805 F.2d 126, 133 (3d Cir. 1986). Although a supervisor cannot encourage constitutional violations, a supervisor has "no affirmative constitutional duty to train, supervise or discipline so as to prevent such conduct." Id. quoting Brown v. Grabowski, 922 F.2d 1097, 1120 (3d Cir. 1990), cert. denied, 501 U.S. 1218 (1991). The supervisor must be personally involved in the alleged misconduct. Rode v. Dellarciprete, 845 F.2d 11958, 1207 (3d Cir. 1988). Section 1983 liability cannot be predicated solely on *respondeat superior*. Rizzo v. Goode, 423 U.S. 362 (1976); see also Monell v. Department of Social Services, 436 U.S. 658 (1978) (superiors of line officers who act in violation of constitutional rights may not be held liable on a theory of vicarious

liability merely because the superior had a right to control the line officer's action); Robinson v. City of Pittsburgh, 120 F.3d 1286, 1293-1295 (3d Cir. 1997) (to hold police chief liable under § 1983 for violating female subordinate officer's rights, she was required to prove that he personally participated in violating her rights, that he directed others to violate her rights, or that he had knowledge of and acquiesced in his subordinates' violations).

In this case, Plaintiff has failed to present sufficient evidence to support any claim that his constitutional rights were violated on August 6, 2007. "[T]he absence of an underlying constitutional violation precludes any supervisory liability on a 'knowledge or acquiescence' or 'failure to train' theory." Verbanik v. Harlow, 2012 WL 4378198, *9 (W.D.Pa. Sept. 25, 2012), citing Crawford v. Lappin, 446 Fed.Appx. 413, 416 (3d Cir. 2011)(*citing* Argueta v. U.S. Immigration and Customs Enforcement, 643 F.3d 60, 70 (3d Cir. 2011)). Thus, summary judgment should be entered in favor of Defendant on Plaintiff's supervisory liability claim based upon a failure to train.

### III.  CONCLUSION

For the foregoing reasons, it is respectfully recommended that Defendant's Motion for Summary Judgment [ECF No. 79] be granted.

In accordance with the Federal Magistrates Act, 28 U.S.C. § 636(b)(1), and Fed.R.Civ.P. 72(b)(2), the parties are allowed fourteen (14) days from the date of service to file written objections to this report and recommendation. Any party opposing the objections shall have fourteen (14) days from the date of service of objections to respond thereto. Failure to file

objections will waive the right to appeal.  <u>Brightwell v. Lehman</u>, 637 F. 3d 187, 193 n. 7 (3d Cir. 2011).

<u>/s/ Susan Paradise Baxter</u>
SUSAN PARADISE BAXTER
United States Magistrate Judge

Dated: March 1, 2013

cc:     The Honorable Sean J. McLaughlin
        United States District Judge